IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DEAN M. JAVID, )<br>)<br>         **Plaintiff,** )<br>)<br>         v. )<br>)<br>SOS INTERNATIONAL LTD. )<br>)<br>         **Defendant.** )<br>) | Civil Action No. 1: 12-cv-1218 (JCC/TCB) |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Plaintiff filed this action on November 1, 2012, alleging both individual and class violations of the Fair Credit Reporting Act ("FCRA"). On February 25, 2013, Plaintiff filed an Amended Complaint, dismissing one of his two individual counts and withdrawing several factual and legal allegations, including his class allegations. Plaintiff now proceeds on the single claim that SOSi "willfully" violated the FCRA by failing to provide him with a copy of his consumer report and a summary of rights at least five days before taking "adverse action" against him. See Plaintiff's Amended Complaint ("Compl.") ¶¶ 29, 30.

Because the undisputed facts show that SOSi did not, at any time, deny Plaintiff employment or take any other adverse action against him, Plaintiff's claim fails as a matter of law. Separately, even if Plaintiff could show that SOSi's made an adverse decision concerning his employment, any such decision was made more than two years before Plaintiff filed his Complaint, and therefore his claim is time-barred.

# FACT SUMMARY

Plaintiff Dean Javid applied for a position with SOS International, Ltd. ("SOSi"), a U.S. Government Contractor, on or about September 30, 2010. See Defendant's Statement of Undisputed Facts ("Undisp. Facts") ¶ 1. Plaintiff sought employment as a linguist serving the Defense Intelligence Agency in Afghanistan, a position that required, among other things, a Secret U.S. Government security clearance. Id. ¶¶ 1, 2, 3. Obtaining a Secret clearance was a necessary, but not sufficient, prerequisite to retention. Candidates for the DIA position were also required to submit to – and pass – a government conducted Security Subject Interview and Counterintelligence Scope Polygraph ("CI Poly"). Id. ¶ 4.

The DIA also required that candidates for this position have no bad debt. Undisp. Facts ¶ 5. Perhaps for that reason, right from the outset Plaintiff lied to SOSi and to the United States Government regarding his credit history. Id. ¶¶ 6, 7. Although a rental home he owned had been subject to a foreclosure sale on October 5, 2010, Plaintiff represented to SOSi and the U.S. Government that he had no credit problems. Id. ¶¶ 6, 7, 8. Not surprisingly, Plaintiff's credit problems were quickly uncovered in the course of a background check required of all candidates for his position. On September 30, 2010, Plaintiff executed a Disclosure and Authorization, which authorized SOSi to request a consumer report regarding Plaintiff from Hire-Right, Inc. Id. ¶¶ 9, 10. SOSi requested this report from Hire-Right on October 6, 2010, and the report was completed and provided to SOSi on October 7, 2010. Undisp. Facts ¶ 11.

Shortly after obtaining the results, on October 12, 2010, SOSi notified Plaintiff that the credit report reflected an outstanding delinquent balance to EMC Mortgage. Undisp. Facts ¶ 13. SOSi asked Plaintiff to provide proof that he had paid the mortgage balance and that his account

with EMC Mortgage was in good standing. Id. ¶¶ 12, 13. SOSi asked for this proof because Plaintiff would not satisfy DIA requirements if he had any bad debt. Id. ¶¶ 5, 12, 13.

Not later than October 13, 2010, Plaintiff understood precisely the nature of SOSi's concerns and that he needed to provide proof that his EMC Mortgage account was in good standing. Undisp. Facts ¶ 16. On that date, he faxed to SOSi three receipts of payments wired to EMC Mortgage on October 5, 2010. Id. ¶ 16. In response, Karen Williams, the SOSi Recruiting Coordinator assigned to his application, informed Plaintiff that SOSi still needed a letter from EMC Mortgage stating that his account was in good standing. Id. ¶ 18.

Despite his bad debt, SOSi kept Plaintiff in the recruiting pipeline and continued to process his application. See generally Undisp. Facts ¶¶ 19, 20, 21, 24, 28, 29, 32, 33. For example, SOSi arranged and paid for Plaintiff to take the second set of language tests for the position on October 19, 2010. Id. ¶ 21. In November 2010, at the request of Plaintiff's wife, Ms. Williams and Maryam Arsala, Plaintiff's Recruiters, worked together to provide Plaintiff with a letter to give to EMC Mortgage explaining SOSi's need for a letter of good standing, in an effort to assist Plaintiff in his dealings with the mortgage company. Id. ¶ 24. In January 2011, Plaintiff sent SOSi a more recent copy of his credit report showing that he still had a delinquent mortgage account. Id. ¶ 25. In February 2011, Ms. Arsala sent Plaintiff study materials so he could prepare to be retested on language tests that he had failed in October. Id. ¶ 29. Michael Lynch, Plaintiff's subsequent SOSi Recruiter (after Ms. Arsala's departure from SOSi), also contacted Plaintiff in February 2011 to follow up with him regarding his credit issue. Id. ¶ 30. Shortly after Mr. Lynch resigned, Michael Voliva, yet another SOSi Recruiter, contacted Plaintiff in May 2011 to inquire about the status of the EMC letter. Id. ¶ 31. Then, in August 2011, two other SOSi employees contacted Plaintiff and offered him a position on a different

SOSi contract, an offer that Plaintiff declined. Id. ¶ 33. Finally, at the end of September 2011, when SOSi learned that Plaintiff had been approved for his Secret clearance, Ms. Williams called Plaintiff to see if he was still interested in the position, but Plaintiff did not return the call. Id. ¶¶ 35, 36.

To date, Plaintiff has not provided SOSi with a letter from EMC Mortgage stating that his account is in good standing. Nevertheless, at no time did SOSi inform Plaintiff that it would not hire him or that his application had been rejected. Undisp. Facts ¶ 37. Therefore, the FCRA never came into play.

## ARGUMENT

**I.     Plaintiff Cannot Show That SOSi Took Any Adverse Action Against Him.**

Plaintiff seeks to recover under that section of FCRA, 15 U.S.C. §1681b(b)(3)(A), that requires a person "intending to take" an "adverse action" against the subject of a consumer report, based on that consumer report, to do certain specific things before taking the adverse action. Unless there is an "adverse action" and an intent to take an adverse action, §1681b(b)(3)(A) imposes no obligations.

FCRA defines an "adverse action" in the employment context to mean "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. §1681a(k)(1)(B)(ii). To constitute an "adverse action," there must be a denial of employment or another adverse decision. Neither occurred in this case.

When SOSi learned of Plaintiff's delinquent account with EMC, it notified Plaintiff and asked him to provide a letter of good standing from EMC. Undisp. Facts ¶ 13. Plaintiff never provided that letter. Id. Over the course of eleven months, SOSi kept in touch with Plaintiff and took other steps toward processing his application, all the while checking on the status of his

4

credit issues. Finally, in September 2011, when Plaintiff did not respond to a call asking if he was still interested in the position, SOSi stopped trying. Even then, SOSi did not inform Plaintiff that it would not hire him; it merely stopped trying to contact him.

This course of events is neither a denial of employment nor an adverse decision. Merely asking an applicant to resolve a credit issue is not an "adverse action" under FCRA because such resolution efforts do not involve a decision adverse to the applicant's employment interests. This is true even if the employer knows that the applicant's failure to resolve the issue may eventually hinder his employment opportunities, and even if the employer forms an intent to withdraw an offer on that basis – but does not withdraw the offer. See Obabueki v. International Business Machines Corp., 145 F. Supp.2d 371 (S.D.N.Y. 2001). In Obabueki, the plaintiff received a letter from IBM dated October 13, 1999 notifying him that the company intended to withdraw its conditional offer of employment based on the contents of a consumer report. Id. at 391.[1] The plaintiff argued that this notice alone constituted a violation of FCRA by IBM because it had already made an internal decision to withdraw his conditional offer of employment before mailing him the letter. Id. The Court rejected plaintiff's assertion, holding that "[c]learly, plaintiff did not suffer any adverse effect until his offer of conditional employment was withdrawn on October 18, 1999." Id. at 392. As the Court in Obabueki recognized, the law plainly permits an employer to consider adverse action, and even to formulate an intent to take an adverse action, without violating FCRA. The Obabueki Court reasoned: "how can an employer send an intent letter without first having the requisite intent?" Id. For example, if after receiving a bad credit report concerning an applicant, an employer told the applicant it could not hire him because of the bad report, but was then persuaded by the applicant's explanation and

---

[1] IBM subsequently sent a letter, dated October 18, 1999, notifying Plaintiff that the conditional offer of employment was withdrawn.

hired him anyway, the employer would have had no obligations under §1681b(b)(3)(A) and thus there could be no FCRA violation. Here, because SOSi continued to process Plaintiff's application while it waited for him to resolve his credit issue, there was no adverse action taken against Plaintiff. In fact, Plaintiff concedes as much. At his deposition, Plaintiff complained that SOSi "never sent me any official letter to deny me"; rather they left him "just sitting there waiting for the green light." See Undisp. Fact ¶48; Exhibit A (Deposition of Dean Javid), 96:4-5, 97:12-21.

To the extent Plaintiff argues that SOSi put his application "on hold" pending Plaintiff's resolution of the credit issue and that this alone constituted an adverse action, his claim will also fail, as placing an application "on hold" does not amount to an adverse action under FCRA. See Johnson v. ADP Screening and Selection Services, 768 F. Supp.2d 979 (D. Minn. 2011). In Johnson, the Plaintiff argued that Robert Half International, Inc. had violated FCRA on February 11, 2010, when it "notified him it was placing his application on hold due to the background report." The Court rejected plaintiff's argument, holding that "[t]he February 11 decision to place the application on hold is not an adverse action." Id. at 983. The Court reasoned that FCRA actually requires an employer to place an application "on hold" while it gives the applicant an opportunity to rebut or otherwise remedy issue arising from the consumer report. Id. ("FCRA places an employer in a position where it cannot hire and it cannot reject an applicant; it must give notice that it intends to reject him. In other words, it cannot act and must place the application 'on hold'.")[2] Here, unlike in Johnson, SOSi neither wanted nor intended to reject Plaintiff's application for employment. Undisp. Facts ¶ 37. Rather, it continued to process Plaintiff's application while it waited for Plaintiff to resolve the credit issue. Id. To hold that

---

[2] RHI, unlike SOSi, ultimately notified Johnson that he had been disqualified from employment with RHI on February 25, 2010.

SOSi is liable because it gave Plaintiff too much time to resolve his outstanding credit issue would turn FCRA on its head.

Lastly, Plaintiff cannot show that anyone at SOSi formed an intent to take adverse action against him. The record evidence amply demonstrates that SOSi *wanted* to hire him and kept hoping that it could. By notifying him of the problem, telling him exactly what he could do to correct it, and assisting him with certain of those steps, SOSi sought to help Plaintiff obtain the position; it did not make any "decision" that was "adverse" to Plaintiff.

**II.     Plaintiff's FCRA Claim Is Time-Barred.**

Even if SOSi's flagging of the EMC Mortgage finding and questioning of Plaintiff concerning that finding constituted a "decision" that was "adverse" to Plaintiff, that decision indisputably was made and communicated to Plaintiff more than two years before he filed his Complaint. Accordingly, Plaintiff's claim is time-barred.

FCRA claims are timely only if a plaintiff files his complaint "not later than the earlier of"

**(1)**     2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

**(2)**     5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. §1681p.

Because Plaintiff claims that SOSi violated FCRA by making an adverse employment decision without complying with the provisions of §1681b(b)(3)(A), the statute of limitations on his claim began to run when he learned of this "decision." Here, SOSi communicated the EMC Mortgage concern to Plaintiff on October 12, 2010, when SOSi informed Plaintiff that it had obtained a consumer report from HireRight that contained negative information regarding his

7

EMC Mortgage account and advised Plaintiff that he should clear up the matter by securing a letter of good-standing from the mortgage company. Undisp. Facts ¶¶ 12, 13. Accordingly, to the extent any "decision" was made by SOSi regarding Plaintiff's employment that could have been deemed "adverse" under FCRA, it occurred – <u>at</u> <u>the</u> <u>latest</u> – on October 12, 2010. Because Plaintiff filed his claim on November 1, 2012 – more than two years after he learned of SOSi's concern that forms the basis of this action – his claim is time-barred. <u>See</u>, e.g., <u>Andresakis v. Capital One Bank, NA</u>, 2011 WL 1097413 (S.D.N.Y. March 23, 2011) (dismissing FCRA claim where Plaintiff could not allege that he discovered the violation less than two years before the complaint was filed); <u>Cintron-Luna v. Roman-Bultron</u>, 668 F.Supp.2d 315 (D. P. R. 2009) (dismissing FCRA claims because they were brought more than two years after Plaintiff had knowledge of the basis of her claim).

  To end-run this straightforward application of the statute of limitations and salvage his claim, Plaintiff must find some other adverse employment decision less than two years before he filed his Complaint. This he cannot do. Plaintiff's entire claim is based solely on the premise that SOSi's concern with the EMC Mortgage finding (which had been made known to Plaintiff on October 12, 2010) hindered his ability to commence employment and that all of SOSi's alleged actions (or inactions) thereafter were by-products of this concern. Plaintiff cannot rely on the *continuing effects* of SOSi's concern to bootstrap himself into the applicable limitations period. Indeed, in the employment context, federal courts, including those in the Fourth Circuit, have routinely held that plaintiffs must point to a <u>discrete</u> and <u>specific</u> unlawful act or decision within the limitations period to avoid the time bar, and they may not rely merely on the continuing effects of a decision that predated the limitations period. These decisions have been handed down frequently in the analogous context of employment discrimination and other

8

wrongful discharge actions, and the reasoning used by the courts in these contexts applies directly here. See, e.g., Delaware State College v. Ricks, 449 U.S. 250, 257-58 (1977) (determining timeliness requires identification of a specific unlawful employment decision, and mere continuation of employment after that decision does not prolong the life of the cause of action);[3] United Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1977) (holding that the present effect of an unlawful employment practice that predated the limitations period "is merely an unfortunate event in history" and does not cure the plaintiff's failure to timely file); Emmert v. Runyon, 1999 WL 253632 at *4 (4th Cir., April 29, 1999) (events that are the inevitable consequences of an earlier unlawful decision do not create a continuing violation sufficient to evade the applicable limitations period); Martin v. Southwestern Virginia Gas Co., 135 F.3d 305, 310 (4th Cir. 1998) (an employer's refusal to undo an earlier unlawful decision is not a new unlawful decision); Price v. Litton Business Sys., Inc., 694 F.2d 963, 965 (4th Cir. 1982) (the limitations period runs from the time the employee is informed of the unlawful decision, "regardless of when the effects of that decision come to fruition."). In short, Plaintiff cannot turn an untimely action into a timely one simply because a decision made outside the limitations period had consequences that manifested themselves during the limitations period.[4]

---

[3] Ricks is particularly analogous and instructive, as there the plaintiff's termination occurred a full year after the allegedly unlawful decision that gave rise to the claim. Although the plaintiff's claim would have been timely had the limitations period been measured from his discharge, the Supreme Court held that it was the complained-of decision, not its eventual effect, that commenced the running of the limitations period. The same is true here. Plaintiff complains of his failure to secure prompt employment at SOSi and alleges that this failure was brought about solely as a result of SOSi's concern with his HireRight Report, which concern was raised in October 2010, more than two years before he filed suit. Thus, Plaintiff's limitations period began running in October 2010, and his claim is not saved simply because he felt the effects of this alleged decision into 2011.

[4] It is clear that Plaintiff was aware of this vulnerability and attempted to plead around it, although without success. For example, in his original Complaint Plaintiff alleged that SOSi had obtained a credit report from Absolute Background Search on or after November 1, 2010 – an

### III. Because Plaintiff Cannot Prove that SOSi Willfully Violated FCRA, His Claim for Punitive Damages Should be Dismissed.

Even if a fact-finder were to conclude that SOSi took an adverse action by delaying some aspect of Plaintiff's application, Plaintiff has no evidence of any "willful" violation of FCRA by SOSi. "Willful" violations are violations that are knowing or reckless. Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 57 (2007). "A company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the Act's terms, but shows the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69. To determine whether a defendant acted recklessly, the Safeco decision instructs courts to review " the text of the statute, case law that existed at the time of the alleged violation, and any agency interpretations." Id. at 69-70.

Plaintiff here has not pled, and cannot establish, any facts demonstrating that SOSi's understanding of the term "adverse action" was objectively unreasonable or that SOSi knew or should have known that its attempt to help Plaintiff resolve his credit issue constituted an "adverse action." Indeed, "the question of what constitutes an adverse action under §1681a(k)(1)(B) is not always clear." Goode v. LexisNexis Risk & Information Analytics Group, Inc., 848 F. Supp.2d 532, 542 (E.D. Pa. 2012) (dismissing allegations of willful non-compliance with FCRA against a CRA who had not complied with §1681b(b)(3)(A) before

---

allegation clearly crafted to preempt timeliness defenses. See Original Complaint ¶ 18. When challenged on this allegation by defense counsel, however, Plaintiff deleted these allegations from his Amended Complaint, and he later testified in his deposition that he has *no knowledge* of any report having been obtained by SOSi from any entity named Absolute Background Search; that he cannot identify that entity, what it did, or where it was located; that he could not describe why he believed it to be in any way connected to SOSi, other than from what his lawyer told him. See Exhibit A (Deposition of Dean Javid), at 100:1-101:15, 173:11-179:16. In fact, SOSi has never used Absolute Background Search, and did not obtain any consumer report regarding Plaintiff after the Hire-Right report obtained on October 7, 2010. Undisp. Facts ¶15.

adjudicating an applicant to be "noncompetitive" because definition of "adverse action" was not clear and defendant's interpretation was not "objectively unreasonable."). Plaintiff has no evidence that SOSi intended to take – or understood that it had taken – an adverse action against him. Moreover, the evidence shows that SOSi understood exactly the opposite: SOSi provided Plaintiff with ample opportunity to dispute the negative credit information; it continued to inquire of Plaintiff regarding his credit issues for weeks and months after notifying him of the issue; it responded to his request to draft a letter to EMC Mortgage to help him resolve the matter; it continued to maintain him in the applicant pipeline and addressed other discrepancies with his application as they arose. Undisp. Facts ¶¶ 19, 20, 21, 24, 28, 29, 32, 33.[5] Thus, the evidence proves that SOSi was attempting to help Plaintiff secure employment and that, even if its course of conduct is now deemed to constitute "adverse action" under FCRA, SOSi did not act willfully or recklessly with regard to such a definition of "adverse action."[6]

For all these reasons, the Court should find, as a matter of law, that SOSi's conduct was not "objectively unreasonable" and should therefore dismiss Plaintiff's claim that SOSi willfully violated FCRA.[7]

---

[5]  For instance, in May 2011, SOSi's Security Department fielded two concerns from the government regarding the citizenship status of Plaintiff's wife and daughter, conveying the requests for information to Plaintiff, and conveying his responses to the government. Undisp. Facts ¶ 32. If SOSi believed it had already denied Plaintiff employment, why would SOSi have bothered to make this effort?

[6]  It is also significant that in January 2011, Plaintiff sent SOSi a copy of a credit report that continued to reflect an outstanding balance on his mortgage, and he provided SOSi with a letter from his mortgage provider indicating that EMC continued to consider him to be in default. Undisp. Facts ¶ 25. Therefore, SOSi would have been quite justified in simply denying Plaintiff's application outright, but it did not, despite these ongoing credit problems. This provides further support for SOSi's argument here that its belief that it was not taking adverse action was not objectively unreasonable.

[7]  Plaintiff has not alleged a negligent violation of FCRA. See Compl. ¶¶27-33. Thus, if the Court finds that summary judgment in favor of SOSi is appropriate on the issue of "willfulness," then the Complaint should be dismissed.

11

## IV.     Summary Judgment Is Appropriate On Plaintiff's Claim for Actual Damages.

In his Amended Complaint, Plaintiff demanded only statutory damages, punitive damages and reasonable attorney's fees. He did not seek "actual damages." When requested in discovery, Plaintiff refused to provide any documents relating to his alleged claim for actual damages. See Plaintiff's Responses to Defendant's First Request for Production of Documents and Plaintiff's Objections and Responses to Defendant's Second Request for Production of Documents. Moreover, Plaintiff testified conclusively that he had no actual damages arising from the alleged failure of SOSi to provide him with a copy of his consumer report. Undisp. Facts ¶ 39. The only damages to which Defendant testified are injuries arising from the stress of having his home foreclosed upon, and the uncertainty of not knowing whether SOSi would be able to engage him on the only job opportunity he professed to seek – a position with the DIA in Afghanistan. Because those injuries, to the extent they existed, were not proximately caused by the alleged failure of SOSi to comply with those sections of FCRA identified by Plaintiff, Plaintiff cannot demonstrate any "actual damage" arising from his claim, and therefore judgment should be entered in favor of SOSi on any such claim. See Vlasek v. Wal-Mart Stores, Inc., 2008 WL 2937760 (S. D. Tex. 2008) (ruling that, because Plaintiff did not suffer any actual damage from the failure to receive a copy of the FCRA report, Plaintiff could not recover any actual damages.") In Vlasek, the plaintiff conceded that the report was accurate and that she would have been fired whether or not she obtained the report. Here, Plaintiff admitted that having the report would not have changed his situation at all; he would have done nothing differently had he received a copy of the HireRight report. Undisp. Facts ¶ 39.

## **CONCLUSION**

For all these reasons, SOSi asks this Court to grant judgment in its favor on Plaintiff's Complaint.

Respectfully submitted,

LORENGER & CARNELL PLC

_____/s/_____
Michael J. Lorenger, VSB #38910
Susanne Harris Carnell, VSB # 41521
Lorenger & Carnell PLC
651 South Washington Street
Alexandria, Virginia 22314
(703) 684-1804 Direct
(703) 684-1805 Fax
mlorenger@lorengercarnell.com
scarnell@lorengercarnell.com

Counsel for SOS International, Ltd.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of April, 2013, I will electronically file the foregoing Defendant's Brief in Support of its Motion for Summary Judgment, along with the Motion papers themselves, including exhibits, the Proposed Order, and the Statement of Undisputed Facts, with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record and/or their counsel, including:

Kristi C. Kelly (VSB #72791)
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Second Floor
Fairfax, VA 22030
kkelly@siplfirm.com

Leonard Bennett (VSB #37523)
Susan M. Rotkis (VSB #40693)
CONSUMER LITIGATION ASSOCIATES PC
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
lenbennett@clalegal.com

Matthew Erausquin (VSB #65434)
Janelle Mason (VSB #82389)
CONSUMER LITIGATION ASSOCIATES PC
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
matt@clalegal.com
Janelle@clalegal.com


/s/
Michael J. Lorenger (VSB 38910)
Susanne Harris Carnell (VSB 41521)
LORENGER & CARNELL PLC
651 South Washington Street
Alexandria, Virginia 22314
(703) 684-1808 – Phone
(703) 684-1805 – Fax
mlorenger@lorengercarnell.com