**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| **DEAN M. JAVID,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 1: 12-cv-1218 (JCC/TCB)** |
| | ) | |
| **SOS INTERNATIONAL LTD.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## STATEMENT OF UNDISPUTED FACTS

1.      Javid applied to SOS International ("SOSi") to be a cultural advisor/linguist on SOSi's contract with the Defense Intelligence Agency on September 30, 2010.  See Exhibit A, Transcript of Deposition of Dean Javid ("Javid Dep.") 129:17-130:21, 179:21-180:22 ; Exhibit B, Transcript of Deposition of Karen Williams ("Williams Dep.") 15:13-22, 37:22-38:19.

2.      Applicants for the DIA linguist position had to satisfy many stringent requirements before being selected for the position.  Javid Dep. 134:8-12; Javid Dep. Ex. 1.  See also Exhibit C, Declaration of Douglas Meyer ("Meyer Dec.") ¶7; Exhibit D, Deposition of Maryam Arsala ("Arsala Dep.") 14:19-15:2; 15:18-16:20 (testifying that, of the 60 individuals she recruited for the DIA contract during her time at SOSi, only one was successfully placed on the contract).

3.      Applicants were required to obtain a Secret security clearance.  Javid Dep, 82:2-4; Meyer Dec. ¶9.

4.      Applicants were also required to submit to – and successfully pass – a DIA administered Subject Interview and Counterintelligence Polygraph.  Meyer Dec. ¶9.

1

5.      DIA required candidates to be current on all of their financial obligations.  Meyer

Dec. ¶10.  DIA rejected candidates with outstanding bad debt. Id. See also Williams Dep. 56:16-

57:3.

6.      Before applying for the position, Plaintiff had one brief conversation with

Maryam Arsala, a SOSi recruiter.  Javid Dep. 55:7-22.  During that initial conversation, Javid

told Ms. Arsala that he had no outstanding credit issues.  Arsala Dep. 18:18-20:11, 24:19-25:3,

61:8-17.  Plaintiff also represented to the U.S. Government that he had no credit issues.  Javid

Dep. 205:14-22; Javid Dep. Ex. 14 (excerpted).

7.      In fact, EMC had foreclosed on Javid's property located at 9011 Mulvaney Court

on October 5, 2010.  Javid Dep. 93:7-10, 95:3-6, 206:12-14.

8.      Javid rented out the home at 9011 Mulvaney Court, and lived at 6833 Creek Crest

Way.  See Javid Dep. 18:20-20:7, 20:14-22:20, 104:20-105:12, 107:14-19, 124:2-22, 181:11-22,

184:5-9, 195:10-196:6, 198:1-201:11, 202:9-204:15, 218:3-11; Javid Dep. Exs. 6,12, 14, 15.  See

also Arsala Dep. 61:8-63:6; Exhibit E (excerpted) (Plaintiff's Tax Return reflecting an address of

6833 Creek Crest Way and rental income for Mulvaney Court); Exhibit F (White Page listing for

D. Javid) and compare  See Javid Dep. 29:9-30:15.

9.      As part of that packet, SOSi provided to Javid a stand-alone disclosure and

consent form to authorize its vendor, HireRight, to obtain a consumer report regarding Javid.

Williams Dep. 27:13-28:3; Javid Dep. 99:1-9.

10.     As part of his application package, Javid signed and returned an authorization and

disclosure form dated September 30, 2010.  Javid Dep. 99:1-9, 195:10-196:6; Javid Dep. Ex. 12

(Executed Disclosure Form); Javid Dep. Ex. 6 (Packet of Executed Forms).

11.     On October 6, 2010, SOSi requested, and on October 7, 2010 HireRight provided to SOSi, a background report regarding Javid.  <u>See</u> Javid Dep. 220:4-21; Javid Dep. Ex. 18 (Hire Right Report) (excerpted).  The Hire-Right report disclosed that Javid had significant, past due balance owed to EMC Mortgage Company.  <u>Id</u>.  <u>See also</u> Williams Dep. 55:1-56:7.

12.     On October 7, 2010, Beatriz Chung-Hogan emailed Karen Williams that Javid's credit report "shows a negative account, for which he needs to resolve issue, and send proof of payment (pay past due amount in full), and good standing letter, before continuing with process." <u>See</u> Exhibit G, Declaration of Karen Williams ("Williams Dec.") ¶4 and Williams Dec. Exs. 1, 2 (Emails from B. Chung-Hogan to K. Williams dated October 7, 2010).

13.     Ms. Williams called Javid on October 12, 2010 left him a message stating that he needed to provide a letter showing his account is in good standing regarding EMC Mortgage. Williams Dep. 57:10-20; Williams Dec. ¶3; Meyer Dec. Ex. 1 (Applicant Database note dated October 12, 2010).  Ms. Williams was the first person to raise the Hire-Right report issue to Javid's attention. Javid Dep. 12:11-14:1, 15:2-20.

14.     SOSi did not obtain any other consumer report regarding Javid.  Williams Dep. 20:5-23, 22:14-18; Meyer Dec. ¶¶7,8; Javid Dep. 100:1-101:15, 137:20 – 138:19, 142:8-143:10; Javid Dep. Ex. 2.

15.     SOSi has never obtained a consumer report from an entity named Absolute Background Search, or any entity named Absolute.  <u>See</u> Meyer Dec. ¶8; Exhibit H (Declaration of Michael Cooley).

16.     On or before October 13, 2010, Javid understood that SOSi had procured a consumer report on him, that consumer report contained negative credit information, and that he needed to provide proof that his account with EMC was fully paid and in good standing.  <u>See</u>

Javid Dep. 94:1–95:17; Exhibit I (Plaintiff's Answer to Defendant's First Request for Admissions) (excerpted), Response Nos. 6, 7, 8, 9.  By October 13, 2010,  he arranged to have his daughter fax several receipts to Ms. Williams regarding his EMC account.  Javid Dep. 186:7-187:18; Javid Dep. Ex. 7.

17.     Javid followed up to confirm his fax had been received on October 14, 2010.  Ex. I, Answer to Request No. 5.

18.     At that time, Ms. Williams provided the receipt to Raphy Kasselian and then reported back to Javid that SOSi still needed a letter from EMC stating that his account was in good standing.  Williams Dep. 57:21-58:7.

19.     On October 14, 2010, Javid completed his Electronic Questionnaire for Investigation Processing (eQip), a document submitted to the U.S. Government to initiate the processing of a security clearance.  Javid Dep. 198:22-200:13; Javid Dep. Exs 14, 15.

20.     On October 18, 2010, Gedib Alfred, SOSi's Security Representative, requested that Javid provide him with additional information, including fingerprint cards.  See Williams Dec. ¶6; Williams Dec. Ex. 3 (Email from G. Alfred to D. Javid dated October 18, 2010).

21.     On October 19, 2010, Ms. Williams sent to Javid a second set of language tests required of DIA candidates: reading and writing tests in each of Dari, Pashto and English. Meyer Ex. 1 (Note in Applicant database regarding Javid on October 19, 2010.

22.     By September or October 2010, Javid had already obtained counsel to represent him with respect to his mortgage and his efforts to seek a loan modification.  Javid Dep. 17:9-22.

23.     On October 21, 2010, Javid obtained a copy of his True Credit report from TransUnion.  See Exhibit J (Plaintiff's #000083-000101) (excerpted).

24.     On November 18, 2010, Williams sent a letter to Plaintiff on behalf of Maryam

Arsala that had been requested by Javid's wife.  See Javid Dep. 187:22-189:14; Javid Dep. Ex. 8;

Arsala Dep. 50:16-51:6, 55:11-56:2.  SOSi sent the letter only to Javid.   Williams Dep. 62:8-

63:7.

25.     In late January, Mustafa Rasuli, Javid's son-in-law, forwarded to Maryam Arsala

copies of two credit bureau updates, which Ms. Arsala forwarded to the Security Department.

See Javid Dep. 208:16-211:18, Ex. 16 (Email chain dated January 28-31, 2012).  Rasuli stated in

that correspondence that  the mortgage company had "corrected the credit statements but not

completely."  Id.

26.     After review, SOSi reiterated its request that Javid provide a letter of good

standing from EMC Mortgage.  Williams Dep. 60:4-23.

27.     On January 31, 2011, Rasuli told SOSi that EMC would not provide any letter.

Javid Dep. 208:16-211:18, Javid Dep. Ex. 16 (Email from M. Rasuli to K. Williams and M.

Arsala dated January 31, 2011).

28.     On February 1, 2011, Ms. Williams suggested to Ms. Arsala and Mr. Lynch that

SOSi consider Javid for a different contract, the INSCOM contract.  Williams Dec.¶8; Williams

Dec. Ex. 5 (Email from K. Williams to M. Lynch, M. Arsala dated February 1, 2010).

29.     On February 1, 2011, Ms. Arsala forwarded to Javid Pashto study materials.  See

Arsala Dep. 71:18-23, 72:11-74:1; Arsala Dep. Ex.12.

30.     Michael Lynch contacted Javid later in February to follow up regarding his credit

issues.  Exhibit K, Deposition of Michael Lynch ("Lynch Dep.") 73:2-15; Meyer Dec. Ex. 1.

31.     Karen Williams and Michael Voliva both followed up with Javid in May 2011, and Plaintiff represented that he was trying to obtain the letter of good standing from EMC. Meyer Dec. Ex. 1; Williams Dec. ¶¶9,10; Williams Dec. Exs. 7, 8.

32.     Also in May 2011, SOSi's security department fielded several inquiries regarding Javid's foreign contacts as part of the Government's security clearance investigation. See Javid Dep. 82:11-83:18, 192:17-193:22; Javid Dep. Exs. 10, 11; Williams Dec. ¶9; Williams Dec. Ex. 6.

33.     In August 2011, SOSi contacted Javid to ask him whether he was interested in a different position: he was not. Javid Dep. 68:7-70:20; Williams Dep. 65:10-66:23; Meyer Dec. Ex. 1.

34.     On September 27, 2011, SOSi learned that the U.S. Government had issued Javid a Secret security clearance. See Williams Dec. ¶13; Williams Dec. Ex. 9 (Emails dated September 27-28, 2011).

35.     On September 28, 2011, Ms. Williams called Mr. Javid to inquire whether he remained interested in the DIA linguist position now that his clearance had been approved. Williams Dec. ¶13; Williams Dec. Ex. 10 (Cell phone records for K. Williams showing call to Javid's phone number on September 28, 2011) ; Meyer Dec. Ex. 1; Javid Dep. 128:9-16.

36.     Javid never returned her call. Williams Dec. ¶13.

37.     SOSi never made a decision not to hire Javid for the DIA linguist position. Lynch Dep. 77:9-19; Arsala 20:13-20, 58:15-17, 64:16-21, 65:14-19 (testifying that SOSi wanted to hire Javid), 86:7-14, 88:3-89:17; Javid Dep. 72:8-16, 96:4-5, 110:8-9.

38.     Javid never provided to SOSi a letter from EMC Mortgage indicating that his account was in good standing. Williams Dep. 71:22-72:5; Arsala Dep. 22:5-9.  Through at least

the inception of this lawsuit, EMC Mortgage believed Plaintiff's account was delinquent.  Javid Dep. 89:12-90:18.

39.     Javid suffered no injury or damage resulting from SOSi's alleged violation of FCRA.  Javid Dep. 65:12-18; 220:4-221:13.