```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division

DEAN M. JAVID,                   )
                                 )
                                 )
         v.                      )
                                 )
                                 )
SOS INTERNATIONAL, LTD,          )   1:12cv1218 (JCC-TCB)
                                 )
                                 )
                                 )
         Defendant.              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant SOS International LTD.'s ("SOSi" or "SOSi") Motion for Summary Judgment ("Motion"). [Dkt. 28.] For the following reasons, the Court will grant SOSi's Motion.

### I. Background

This case arises out of Plaintiff Dean Javid's ("Plaintiff" or "Javid") application for a position with Defendant SOSi as a linguist serving the Defense Intelligence Agency, and SOSi's use of a consumer report regarding Javid during that application process.

A.  Factual Background

SOSi is a United States government contractor. (Def. Statement of Undisputed Facts ("Def. SOF") [Dkt. 29-1] ¶ 1; Def. Mem. at 2.)

1

1.  Javid's Initial Application

On September 30, 2010, Javid applied for a linguist position on SOSi's contract with the Defense Intelligence Agency ("DIA"). (Def. SOF ¶ 1.) The DIA linguist position had a number of stringent requirements, including that applicants obtain a Secret security clearance, submit to and pass a Security Subject Interview and Counterintelligence Polygraph administered by the DIA, and have no outstanding bad debt. (*Id.* ¶¶ 2-5.) Prior to his application for the position, Javid represented to one of SOSi's recruiters, Maryam Arsala, that he had no outstanding credit issues. (*Id.* ¶ 6.) As part of his September 30, 2010 application, Javid signed and submitted a disclosure and consent form which authorized SOSi's vendor, HireRight, to obtain a consumer report on him. (*Id.* ¶¶ 9-10.)

2.  Javid's Consumer Report

On October 6, 2010, SOSi requested a consumer report regarding Javid from HireRight, which HireRight completed and provided the next day. (*Id.* ¶ 11.) The consumer report indicated that Javid had an outstanding delinquent balance owed to EMC Mortgage Company. (*Id.*) On October 12, 2010, Karen Williams, the SOSi Recruiting Coordinator assigned to Javid's application, left a message for Javid notifying him about the problem raised by the consumer report and informing him that he needed to provide proof of payment of the mortgage balance and a

2

good standing letter regarding the mortgage. (*Id.* ¶ 13.) On or before October 13, 2010, Javid received the message and understood that a credit report obtained on him by SOSi contained negative credit information and that he needed to provide proof that his EMC account was paid in full and in good standing. (*Id.* ¶ 16.) He arranged to have several receipts faxed to Williams regarding his EMC account that day, and followed up the next day to confirm that his fax had been received. (*Id.* ¶¶ 16-17.) At the time, Williams provided the receipts to her supervisor, but reported back to Javid that SOSi still needed him to provide a letter from EMC stating that his account was in good standing. (*Id.* ¶ 18.)

        3.    <u>Application Process After Results of Consumer Report</u>

The undisputed facts show that following the initial notification about delinquent debt raised by Javid's consumer report, SOSi continued both to work with Javid to resolve his credit problem and to process Javid's application for the DIA linguist position. (*See id.* ¶¶ 19-21, 24, 28, 29, 32, 33.)

During the latter half of October 2010, Javid completed his Electronic Questionnaire for Investigation Processing in order to initiate the processing of a security clearance required for the DIA linguist position and received a request from SOSi's security representative to provide

3

additional information (including fingerprints) for his application. (*Id.* ¶¶ 19-20.) At that same time, SOSi arranged and paid for Javid to take a second set of language tests in Dari, Pashto, and English, tests which DIA candidates were required to pass for the linguist position. (*Id.* ¶ 21; Def. Mem. at 3.)

By October 2010, Javid had retained counsel to assist him with resolving the credit issues reflected on his consumer report, and he had obtained a copy of his True Credit report from TransUnion. (Def. SOF ¶ 22-23.) In November 2010, at Javid's wife's request, SOSi recruiters worked together to provide Javid with a letter from SOSi to EMC Mortgage which explained SOSi's need for a letter of good standing. (*Id.* ¶ 24; Def. Mem. at 3.) In late January 2011, Javid's son-in-law, Mustafa Rasuli, corresponded with SOSi, providing one of Javid's recruiters with copies of credit bureau updates and informing her that the mortgage company had corrected Javid's credit statements partially. (Def. SOF ¶ 25.) The updated credit reports still showed that Javid had a delinquent mortgage account. (*Id.*; Def. Mem. at 3.) After reviewing the updates, the recruiter reiterated that SOSi still needed Javid to provide a letter of good standing from the mortgage company. (Def. SOF ¶ 26.) A few days later, on January 31, 2011, Rasuli informed Javid's recruiters that, despite significant efforts, he was

4

unable to obtain any letters from EMC regarding Javid's account at that time. (*Id.* ¶ 27.) In response, on February 1, 2011, Williams initiated an internal conversation with Javid's other recruiters at SOSi, noting that it did not seem like Javid currently could provide the good standing letter and suggesting that SOSi consider Javid for different contract, the INSCOM contract. (*Id.* ¶ 28.)

### 4. Application Process After February 1, 2011 Internal Discussion

The undisputed facts also show that following the internal discussion on February 1, 2011 between Javid's SOSi recruiters, SOSi again continued to follow up on Javid's application process for the DIA linguist position and on his credit problems. On February 1, 2011, one of Javid's SOSi recruiters sent him study materials for him to prepare to retake language tests, which he had failed in October, for the DIA linguist position. (*Id.* ¶ 29; Def. Mem. at 3.) As of February 9, 2011, a chart of DIA linguist applicants listed Javid still as an "on-hold" candidate for the position, the same status as he had held since at least October 2010. (Pl. Ex. G [Dkt. 33-7] at 1-2; Williams Decl. Ex. 4 [Dkt. 29-9].) Twice in late February 2011 and multiple times in May 2011, Javid's SOSi recruiters contacted him or his family members to follow up further on the status of his credit problem and of the good

5

standing letter.  (Def. SOF ¶ 30-31; Meyer Decl. Ex. 1 [Dkt. 29-5] at 4-5.)  In late May 2011, Javid continued to represent to the SOSi recruiters that he still was trying to resolve the credit issues and to obtain the required good standing letter.  (Def. SOF ¶ 31.)  On September 27, 2011, SOSi learned that the government had issued Javid the Secret security clearance required for the DIA linguist position.  (*Id.* ¶ 34.)  On September 28, 2011, one of Javid's SOSi recruiters called him and left a message asking whether he remained interested in the DIA linguist position now that his security clearance had been approved, but Javid never returned her call.  (*Id.* ¶¶ 35-36.)[1]  At of the current date, Javid still has not provided a letter of good standing from EMC to SOSi and through at least the start of this litigation, EMC believed Javid's account remained delinquent.  (*Id.* ¶ 38.)

---

[1] Javid purports to dispute these facts (*see* Pl. Opp. [Dkt. 33] at 3-4), but the evidence submitted by the parties indicates that these facts actually are undisputed.  Although Javid asserts in his declaration that he never received any communication on September 28, 2011 from SOSi regarding the DIA linguist position, he provides no evidence to support this assertion.  Such an unsupported assertion is insufficient to contradict the evidence which SOSi provides, evidence which includes Javid's deposition testimony in which he agrees that SOSi did contact him around the time that he obtained his security clearance to discuss whether he still was interested in the DIA linguist position.  (*See* Javid Dep. [Dkt. 29-2] 129:9-16; *see also* Meyer Decl. Ex. 1 at 5; Williams Decl. Ex. 9 (emails dated Sept. 27-28, 2011 regarding issuance of Javid's security clearance and the impact of his candidacy for the DIA linguist position specifically); Williams Decl. Ex. 10 (William's cell phone records showing phone call to Javid on September 28, 2011)).

B.  Procedural Background

Javid originally filed suit in this Court on November 1, 2012. [Dkt. 1.] With the Court's leave, Javid filed his Amended Complaint on February 25, 2013. [Dkt. 20.] The Amended Complaint raises one claim, a violation of the Fair Credit Report Act ("FRCA") under 15 U.S.C. § 1681b(b)(3)(A). [*Id.*]

On April 19, 2013, SOSi filed a motion for summary judgment and an accompanying memorandum of law. [Dkts. 28-29.] Javid filed its opposition on May 3, 2013 [Dkt. 33], and SOSi replied on May 9, 2013 [Dkt. 34].

SOSi's Motion is now before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a genuine dispute exists. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

Javid alleges that SOSi willfully violated § 1681b(b)(3)(A) of the FRCA by taking an adverse employment action against him, based in whole or in part on a consumer report, without first providing him a copy of the relevant consumer report and an accurate and current summary of his rights under the FRCA.  (*See* Am. Compl. ¶¶ 28-30; 15 U.S.C. § 1681b(b)(3)(A).)  SOSi argues that it is entitled to summary judgment on this claim because the undisputed facts show that it did not take an adverse employment action against Javid sufficient to trigger the requirements and protections of the FRCA.  (Def. Mem. at 1, 4-7.)  The Court agrees with SOSi and accordingly will grant summary judgment on Javid's FRCA claim.

> Section 1681b(b)(3)(A) of the FRCA mandates that:
>
> > in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter . . . .

15 U.S.C. § 1681b(b)(3)(A).  For purposes of the employment context, the FRCA defines an "adverse action" as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."  15 U.S.C. § 1681a(k)(B)(ii).

9

Here, the Court concludes that no reasonable jury could find that SOSi denied Javid employment as a DIA linguist or made any other employment decision which constitutes an adverse action under the FRCA. In attempting to identify an adverse action, Javid primarily relies on a February 1, 2011 internal discussion between SOSi recruiters about whether he would be able to provide a required letter of good standing from his mortgage company and whether they also should consider him for a different position with less rigorous background requirements. Javid claims that this internal discussion represented a final decision by SOSi to withdraw him from consideration for the DIA linguist position and therefore constitutes an adverse action against him. (Pl. Opp. 13-14, 16.) Javid's assertion, however, fails both as a matter of law and based on the undisputed facts in this case.

First, other courts which have considered similar facts have found that an "internal decision to rescind an offer is not an adverse action" as internal discussions do not have any adverse impact on a plaintiff and a plaintiff is impacted adversely only when a withdrawal of an employment offer actually occurs. *Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 391-92 (S.D.N.Y. 2001); *see Johnson v. ADP Screening & Selection Servs., Inc.*, 768 F. Supp. 2d 979, 982-83 (D. Minn. 2011) (citing *Obabueki* for the proposition that an internal

10

decision was not an adverse action for purposes of the FRCA, as well as concluding that an employer's decision to place an applicant "on hold" in light of the results of a consumer report was not an adverse action). As the court in *Obabueki* noted, the FRCA "expressly allows for the formation of an intent to take adverse action before complying with Section 1681b(b)(3), as it states that 'the person *intending* to take' adverse action must provide the report and description of rights" prior to taking the adverse action. 145 F. Supp. 2d at 392 (quoting 15 U.S.C. § 1681b(b)(3)). The formation of such intent, therefore, cannot be the adverse action itself. As a result, even if Javid was correct in asserting that SOSi made an internal decision to withdraw his conditional offer of employment as a DIA linguist on February 1, 2011, such a decision would not constitute an adverse action triggering the FRCRA's requirements and protections.

Second, the Court concludes that Javid's assertion that SOSi took an adverse action against him by terminating his candidacy for the DIA linguist position -- on February 1, 2011 or afterwards -- is not supported by the undisputed facts. Those facts show that after the internal discussion on February 1, SOSi maintained Javid's application status as the same ("on hold") and continued to process his application for the DIA linguist position, following up with him multiple times over the

11

next six months about outstanding issues with his application including his language scores, his credit problem, and his security clearance. (*See* Def. SOF ¶¶ 29-31, 34-36, 38; Def. Mem. at 3; Pl. Ex. G at 1-2; Williams Decl. Ex. 4; Williams Decl. Ex. 9 (emails dated Sept. 27-28, 2011 regarding issuance of Javid's security clearance and the impact of his candidacy for the DIA linguist position specifically); Williams Decl. Ex. 10 (William's cell phone records showing phone call to Javid on September 28, 2011); Meyer Decl. Ex. 1 at 4-5 (log of SOSi contacts with Javid); Javid Dep. 129:9-16 (admitting he received a message from SOSi on September 28, 2011 about the DIA linguist position in light of his receipt of a required security clearance).) These facts show that SOSi had not made a final decision about Javid's candidacy and instead was giving him time to resolve pending problems with his application. Without identifying a final decision by SOSi adverse to him, Javid cannot prevail and summary judgment against him therefore is appropriate.

### IV. Conclusion

For the foregoing reasons, the Court will grant SOSi's Motion.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| May 23, 2013 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |